MICHIGAN STATE BUILDING AND CONSTRUCTION TRADES
COUNCIL, AFL-CIO v DIRECTOR, DEPARTMENT OF LABOR

Docket No. 206704. Submitted February 9, 2000, at Detroit. Decided June
9, 2000, at 9:00 A.M.

   Michigan State Building and Construction Trades Council, AFL-CIO,
   and Resteel Contractors Association, Inc., brought an action in the
   Wayne Circuit Court against the director of the Michigan Depart-
   ment of Labor and the department (now the Department of Con-
   sumer and Industry Services) challenging a change in department
   policy concerning the establishment of prevailing wages and fringe
   benefits under the prevailing wage act (PWA), MCL 408.551 et seq.;
   MSA 17.256(1) et seq., which requires payment of wages and fringe
   benefits to construction workers on state projects at rates prevail-
   ing in the locality of the project under collective bargaining agree-
   ments between construction workers and their employers. Before
   the change in policy, the department set prevailing wages and
   fringe benefits according to a survey that took into account various
   overtime pay rates and contributions required of employers by col-
   lective bargaining agreements for apprenticeship and training,
   labor-management committees, and supplemental unemployment
   benefits. After the change in policy, the department uniformly set
   overtime pay at 1½ times the regular hourly rate of pay and
   excluded as fringe benefits the employer contributions described
   above. The court, James J. Rashid, J., issued a writ of mandamus
   requiring the defendants to reinstate the prior policy of establishing
   prevailing wages and fringe benefits, entered a declaratory judg-
   ment that the defendants' revised policy was invalid and unlawful,
   and issued an injunction requiring the defendants to include in the
   determination of fringe benefits the various employer contributions
   required under collective bargaining agreements. The defendants
   appealed.

      The Court of Appeals held:

      The trial court did not abuse its discretion in granting declara-
   tory and injunctive relief in favor of the plaintiffs. Section 4 of the
   PWA, MCL 408.554; MSA 17.256(4), provides that "[the department]
   shall establish prevailing wages and fringe benefits at the same rate
   that prevails on projects of a similar character in the locality under
   collective agreements or understandings between bona fide organi-

zations of construction [workers] and their employers." Under the clear and unambiguous language of the PWA, the department does not have the discretion to disregard collective bargaining agreement provisions setting variable overtime pay and to uniformly set overtime pay at 1½ times the normal hourly rate when determining prevailing wages. Likewise, the department, when determining prevailing fringe benefits, may not disregard contributions required of employers under collective bargaining agreements for apprenticeship and training, labor-management committees, and supplemental unemployment benefits.

Affirmed.

STATE — DEPARTMENT OF CONSUMER AND INDUSTRY SERVICES — PREVAILING WAGE.

The Department of Consumer and Industry Services, when establishing prevailing wages and fringe benefits for purposes of the act that requires payment of wages and fringe benefits to construction workers on state projects at rates prevailing in the locality of the project under collective bargaining agreements between construction workers and their employers, must consider overtime pay at the rates provided in those collective bargaining agreements and all negotiated employee fringe benefits, including employer contributions for apprenticeship and training, labor-management committees, and supplemental unemployment benefits (MCL 408.551 *et seq.*; MSA 17.256[1] *et seq.*).

*Klimist, McKnight, Sale, McClow & Canzano, P.C.* (by *John R. Canzano*), for the plaintiffs.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Richard P. Gartner,* Assistant Attorney General, for the defendants.

Before: HOLBROOK, JR., P.J., and KELLY and COLLINS, JJ.

PER CURIAM. In this case involving the prevailing wage act (PWA), MCL 408.551 *et seq.*; MSA 17.256(1) *et seq.*, defendants Lowell Perry[1] and the Michigan

---

[1] Perry is the former director of the former Michigan Department of Labor, now the Michigan Department of Consumer and Industry Services.

Department of Consumer and Industry Services (collectively, the department) appeal the circuit court's final order granting plaintiffs declaratory and injunctive relief and the circuit court's order for a writ of mandamus. We affirm.

The PWA requires, among other things, that prevailing wages and fringe benefits be paid on certain state projects. See MCL 408.552; MSA 17.256(2), MCL 408.553; MSA 17.256(3); *Western Michigan Univ Bd of Control v Michigan*, 455 Mich 531, 533; 565 NW2d 828 (1997). Section 4 of the statute, states, in pertinent part, as follows:

> The commissioner shall establish prevailing wages and fringe benefits at the same rate that prevails on projects of a similar character in the locality under collective agreements or understandings between bona fide organizations of construction mechanics and their employers. [MCL 408.554; MSA 17.256(4).]

Before July 1994, the department established all prevailing wage and fringe benefit rates according to the rates in local collective bargaining agreements as reported in a survey circulated by the department. The survey forms used before July 1994 asked for information regarding fringe benefit cost contributions in the following categories: "health and welfare," "vacation," "pension," "training fund," and "other." That survey also requested information regarding the daily, weekly, Saturday, and Sunday and holiday overtime pay requirements in those agreements.

In July 1994, the department began implementing new policies regarding its determination of prevailing wage and fringe benefit rates. The department determined that prevailing overtime wage rates would uni-

formly consist of time-and-one-half after forty hours a
week, rather than the varying daily, weekly, Saturday,
and Sunday and holiday overtime requirements often
found in collective bargaining agreements, and that
the fringe benefits considered in setting the prevailing
rates would be limited to three categories: health and
welfare, vacation and holiday, and pensions benefits.
Under this revised policy, contributions for appren-
ticeship and training, labor-management cooperation
committees, and supplemental unemployment bene-
fits required under many collective bargaining agree-
ments would not be included in the department's cal-
culations of prevailing fringe benefit rates.

In August 1994, plaintiffs, the Michigan State Build-
ing and Construction Trades Council, AFL-CIO (the
council), and Resteel Contractors Association, Inc.
(the association), filed a complaint for declaratory
judgment, injunctive relief, or a writ of mandamus,
seeking to enjoin the new PWA policies and seeking to
reinstate the department's policies in existence before
July 1, 1994. Plaintiffs then filed a motion for a pre-
liminary injunction or a writ of mandamus. The court
granted plaintiffs' motion, in part. It found that the
department had a duty under MCL 408.554; MSA
17.256(4) to establish prevailing wages at the rate that
prevails under local collective bargaining agreements
and that the process of ascertaining from collective
bargaining agreements what the prevailing wages are
is nondiscretionary and ministerial. The court
directed defendants to cease and desist from imple-
menting the department's new policy establishing pre-
vailing overtime wage rates at time-and-one-half after
forty hours a week and to reinstate the department's
previous policy. The court requested additional brief-

ing regarding the definition of "fringe benefit" and entered a preliminary injunction restoring the status quo for establishing prevailing fringe benefit rates under the PWA.

The parties returned to the circuit court in September 1997 to resolve the fringe benefit issue.[2] The court granted plaintiffs' motion for injunctive relief and ordered the department to include in its determination of prevailing wage and fringe benefit rates contributions required by relevant collective bargaining agreements for apprenticeship and training, labor management committees, and supplemental unemployment benefits. The court concluded that the PWA should be liberally construed to benefit and protect employees and that the fringe benefits at issue were for the benefit of employees because they indirectly benefited all employees and advanced their interests.

Defendants argue on appeal that because the PWA requires that the department determine the prevailing wage and fringe benefit rates, but does not define the terms "overtime," or "fringe benefit," the department has discretion to define what constitutes "overtime" and a "fringe benefit" under the PWA and apply those definitions in establishing prevailing wage and fringe benefit rates. Statutory interpretation is a question of law that we review. de novo on appeal. *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casu-*

---

[2] In December 1994, the case was put on hold as a result of the decision in *Associated Builders & Contractors, Saginaw Valley Area Chapter v Perry*, 869 F Supp 1239 (ED Mich, 1994), holding that the PWA was preempted by the Employee Retirement Income Security Act [ERISA], 29 USC 1001 *et seq.* In June 1997, the United States Court of Appeals for the Sixth Circuit reversed, holding that the ERISA does not preempt the PWA. *Associated Builders & Contractors, Saginaw Valley Area Chapter v Perry*, 115 F3d 386 (CA 6, 1997).

*alty Guaranty Ass'n,* 456 Mich 590, 610; 575 NW2d 751 (1998).

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Frankenmuth Mut Ins Co v Marlette Homes, Inc,* 456 Mich 511, 515; 573 NW2d 611 (1998). This Court will not read into a statute anything that is not within the manifest intention of the Legislature as gathered from the act itself. *In re S R,* 229 Mich App 310, 314; 581 NW2d 291 (1998). Therefore, our courts look first to the specific language of the statute. *In re MCI Telecommunications Complaint,* 460 Mich 396, 411; 596 NW2d 164 (1999). If the plain and ordinary meaning of the language is clear, judicial construction is neither necessary nor permitted. *Heinz v Chicago Rd Investment Co,* 216 Mich App 289, 295; 549 NW2d 47 (1996). Indeed, courts may not speculate with regard to the probable intent of the Legislature beyond the words expressed in the statute. *In re Schnell,* 214 Mich App 304, 310; 543 NW2d 11 (1995). Unless explicitly defined in a statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. *McClellan v Collar (On Remand),* 240 Mich App 403; 613 NW2d 729 (2000).

We address first defendants' argument with regard to overtime wages. Defendants contend that because the PWA contains no definition of the term "overtime," the department may rely on the definition found in the Minimum Wage Law of 1964, MCL 408.384a; MSA 17.255(4a),[3] and apply that definition uniformly in

---

[3] MCL 408.384a; MSA 17.255(4a) defines "overtime" as "compensation not less than 1-1/2 times the regular rate at which the employee is employed for employment in a workweek in excess of 40 hours."

establishing prevailing wage rates, irrespective of the specific provisions regarding overtime pay found in many collective bargaining agreements. We disagree. The plain language of the PWA specifically provides that the department *shall* establish the prevailing wage and fringe benefit rates at the same rates as in local collective bargaining or similar agreements. The word "shall" is generally used to designate a mandatory provision. *Depyper v Safeco Ins Co of America*, 232 Mich App 433, 438; 591 NW2d 344 (1998). Moreover, this Court has previously determined that the department's discretion in establishing prevailing wages under § 4 is extremely limited:

> The Michigan Legislature has not delegated any legislative, policy-making authority to the Department of Labor. The Legislature has declared as the policy of this state that construction workers on public projects are to be paid the equivalent of the union wage in the locality . . . The Department is merely authorized to implement what the Legislature has already declared to be the law in Michigan.
>
> . . . [T]he statute expresses the policy that wages equal to union scale are to be paid to both union and nonunion workers on public construction projects. . . . [The Legislature] merely adopted, as the critical standard to be used by the Department of Labor in determining prevailing wage, the wage rate arrived at through a collective bargaining process . . . . [*West Ottawa Public Schools v Director, Department of Labor*, 107 Mich App 237, 245-246; 309 NW2d 220 (1981).]

Overtime wages clearly fall within the category of wages to be included when determining prevailing wage rates. Further, there is no question that collective bargaining agreements contain very specific provisions regarding overtime pay and that those provisions may contain variable overtime rates. We con-

clude, therefore, that under the unambiguous language of the PWA, the department, in establishing prevailing wage rates, has no discretion to depart from the wage provisions in local collective bargaining agreements by defining "overtime" in a manner inconsistent with those agreements.

We address next defendants' argument that because the term "fringe benefit" is not defined in the PWA, the department may rely on the definition found in the wages and fringe benefits act, MCL 408.471 *et seq.*; MSA 17.277(1) *et seq.*,[4] to determine what benefits should be included in its calculations of prevailing fringe benefit rates. We disagree. While the term "fringe benefit" is not specifically defined in the PWA, again, reference to a definition in a different statute addressing a similar subject is not necessary or proper, where the Legislature has specifically stated that the prevailing fringe benefit rates must be established with reference to local collective bargaining agreements.[5] Given the plain and mandatory language of the PWA and the purpose of the act, we conclude that the term "fringe benefit," in the context of the PWA, must be understood to include *all* negotiated employee benefits.

---

[4] Section 1(e) of the wages and fringe benefits act defines "fringe benefits" as:

> [C]ompensation due an employee pursuant to a written contract or written policy for holiday, time off for sickness or injury, time off for personal reasons or vacation, bonuses, authorized expenses incurred during the course of employment, and contributions made on behalf of an employee. [MCL 408.471(e); MSA 17.277(1)(e).]

[5] Because we conclude that the definition of "fringe benefit" found in the wages and fringe benefits act does not control in the context of the PWA, we need not decide if the challenged benefits fall within that definition.

The benefit provisions that the department chose not to include under its revised policy include apprenticeship and training, labor-management cooperation committees, and supplemental unemployment benefits. Defendants do not contest that such benefits exist in collective bargaining agreements, but argue that, under the definition of "fringe benefit" found in the wages and fringe benefits act, because such benefits are not due, paid to, or made on behalf of any particular employee, they should not be included in the department's calculations of prevailing rates. The PWA does not, however, so restrict the determination of prevailing fringe benefit rates, and to read the statute in such a restricted manner would amount to unwarranted judicial construction. See *Theisen v Knacke*, 236 Mich App 249, 253; 599 NW2d 777 (1999). Again, the statute provides that prevailing wage and fringe benefit rates are to be established "at the same rate that prevails on projects of similar character in the locality under collective agreements . . . ." We believe this language requires that compensation on state projects be determined according to compensation in the private sector, regardless of the form it takes.

Moreover, our Supreme Court has noted that the PWA, "like the federal Davis-Bacon Act [40 USC 276a *et seq.*], implements public policy beneficial to businesses and their workers on *government construction projects* by providing for a certain minimum wage rate *and benefit level*." *Western Michigan Univ Bd of Control, supra* at 545. (Emphasis added.) Indeed, the public policy underlying the federal act has been explained as "protect[ing] local wage standards by preventing contractors from basing their

bids on wages lower than those prevailing in the area" and "giv[ing] local labor and the local contractor a fair opportunity to participate in this building program." *Id.* at 535, quoting *Universities Research Ass'n, Inc v Coutu*, 450 US 754, 773-774; 101 S Ct 1451; 67 L Ed 2d 662 (1981). See also *Associated Builders & Contractors, Saginaw Valley Area Chapter v Perry*, 115 F3d 386, 390 (CA 6, 1997). Because the contested benefits are negotiated employee benefits, whether paid to a particular employee or paid on behalf of employees in general, and thereby add to the labor cost under a contract containing such benefits, we conclude that under the language of the PWA, they must be included in determining prevailing wage and fringe benefit rates under § 4.[6]

We reject defendants' argument that the department's revised interpretation of the PWA is entitled to deference. While a longstanding and consistent administrative interpretation of a statute is entitled to considerable weight and ought not be overruled without cogent reasons, *Ludington Service Corp v Acting Comm'r of Ins*, 444 Mich 481, 490; 511 NW2d 661 (1994), an administrative interpretation is not controlling and cannot overcome a statute's plain meaning. *Western Michigan Univ Bd of Control, supra* at 544. Here, the department's interpretation is neither

---

[6] As plaintiffs note, a bargained-for employee benefit such as labor-management cooperation committees is to be distinguished from employer assessments under some collective bargaining agreements to fund "industry advancement" or "industry promotions" programs. Plaintiffs acknowledge that, unlike contributions for fringe benefits, employer payments to fund industry advancement programs are not bargained as part of the wage and fringe benefit package. Plaintiffs do not contest the department's policy to exclude employer payments to industry advancement programs as part of its determination of prevailing wages and fringe benefits.

longstanding nor consistent with its earlier policy. Rather, the policy challenged by plaintiffs is a "new" interpretation that is contrary to the department's earlier and longstanding policy of relying on surveys of local collective bargaining agreements to establish prevailing wage and fringe benefit rates. Moreover, as we have concluded, the department's revised method of determining prevailing wage and benefit rates conflicts with the statute's plain meaning.

We conclude that under the plain language of the PWA, the department is without discretion to define wages, including overtime, or fringe benefits independently of the collective bargaining agreements in the locality. Rather, in determining prevailing wage and benefit rates, the department is bound by the wage and fringe benefit requirements found in local collective bargaining agreements. Accordingly, we find that the circuit court did not abuse its discretion in issuing a writ of mandamus requiring defendants to reinstate its previous procedure for establishing prevailing wages, in entering a declaratory judgment that defendants' revised policy regarding calculation of fringe benefits was invalid and unlawful, or in granting injunctive relief in favor of plaintiffs requiring defendants to include in the determination of prevailing fringe benefits rates the rates applicable under collective bargaining agreements for apprenticeship, training, supplemental unemployment, and labor-management cooperation committees. *White-Bey v Dep't of Corrections*, 239 Mich App 221, 223; 608 NW2d 833 (1999); *Allstate Ins Co v Hayes*, 442 Mich 56, 74; 499 NW2d 743 (1993); *Kernen v Homestead Development Co*, 232 Mich App 503, 509; 591 NW2d 369 (1998).

Affirmed.